# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CONSOLIDATED COMPANIES, INC.** | * | **CIVIL ACTION NO. 06-4700** |
| | * | |
| **VERSUS** | * | **SECTION "S"** |
| | * | **MAG. 1** |
| **LEXINGTON INSURANCE COMPANY** | * | |
| | * | **JUDGE MARY ANN VIAL LEMMON** |

* * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY PLAINTIFF CONSOLIDATED COMPANIES, INC.

### Introduction

Consolidated Companies, Inc. ("Conco") files this memorandum in support of its Motion for Partial Summary Judgment ("Motion"). Through its Motion Conco seeks an order that the insurance policy issued by defendant Lexington Insurance Company ("Lexington") to Conco at issue in this case (the "Policy") provides coverage for Conco's Business Interruption claim according to the clear language of the Policy. Further, Conco seeks a ruling by this Court that if the jury finds that Lexington has acted arbitrarily, capriciously, and without probable cause in adjusting Conco's claim, including a misinterpretation of provisions in its own Policy, Lexington will be

liable for reimbursement of Conco's professional fees and penalties under La. R.S. 22:658 in the amount of fifty percent of Conco's unpaid claim and penalties under La. R.S. 22:1220 in an amount up to double Conco's claim.

**<u>Conco's Calculation of Its Business Interruption Claim is Covered by the Policy</u>**

There is no doubt that Conco's business was severely crippled by Katrina and that it suffered substantial damage to its facilities, inventory and business. Although all of Conco's claims asserted in this suit are disputed by Lexington, by far the largest disputed claim Conco has asserted is for its Business Interruption losses under the Policy. *See* Policy attached as Exhibit A. The pertinent language is paragraph 7B on page 3, which reads as follows:

> Business Interruption means loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein.
>
> If such loss occurs during the term of this policy, it *shall be adjusted on the basis of the actual loss sustained by the Insured, during the period of restoration, consisting of the net profit (or loss) which is thereby prevented from being earned* **and** *of all charges and expenses (excluding ordinary payroll),* but only to the extent that they must necessarily continue during the interruption of business, and only to the extent to which they would have been incurred had no loss occurred.
>
> Ordinary payroll is defined to be the entire payroll expenses for all employees of the Insured except officers, Executives and department managers.
>
> …
>
> (1) RESUMPTION OF OPERATIONS: *It is a condition* of this insurance *that if the Insured could reduce the loss resulting from the interruption of business,*
>
> > (a) *by a complete or partial resumption of operations,* or
> >
> > (b) by making use of other available stock, merchandise or location *such reduction will be taken into account in arriving at the amount of loss hereunder,* but only to the extent that the Business Interruption loss covered under this policy is thereby reduced.

(2) EXPENSE TO REDUCE LOSS: This policy also covers such expenses as are necessarily incurred for the purpose of reducing any Business Interruption loss under this policy, provided such coverage shall not exceed the amount by which the Business Interruption loss covered under this policy is thereby reduced.

(3) EXPERIENCE OF BUSINESS: In determining the amount of net profit (or loss), charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the Insured's business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

Conco has retained the accounting firm of Legier & Materne to thoroughly review and evaluate Conco's financial statements and voluminous records and to prepare a calculation of its Business Interruption loss, which will be presented at trial by way of expert testimony. *See* copy of expert report attached as Exhibit B. Legier & Materne has applied the simple formula set forth in the Policy, quoted above, and has calculated Conco's Business Interruption loss to be $19,379,642. It has done so using the two steps as called for by the Policy language – namely "the net profit (or loss) which is thereby prevented from being earned" (step one) "and" "all charges and expenses (excluding ordinary payroll)" (step two).

The first step is to calculate the "net profit (or loss) which is thereby prevented from being earned" by calculating the amount of Conco's "but for" profit which was prevented from being earned during the period of restoration ($7,350,126) and subtracting therefrom the actual net profit ($279,006) earned by Conco for the same period, resulting in $7,071,120 for the first step. This is explained and shown on pages 4-5 of Exhibit B.

The second step is to calculate the "charges and expenses (excluding ordinary payroll), but only to the extent that they must necessarily continue during the interruption of business, and only to the extent to which they would have been incurred had no loss occurred." This amount is $12,308,522 and does not include any ordinary payroll. This is explained and shown on page 7 of Exhibit B.

Relying on a confusing analysis nowhere supported by language in the Policy, Lexington arbitrarily proposes to subtract a figure they call "gross margin" or "gross profit" from the sum of step one and step two. Yet the Policy language, quoted above, nowhere uses the term "gross margin." Instead, in subparagraph (1) above, the Policy says that if Conco "could reduce the loss" by a "complete or partial resumption of operations" – which it did by its net profit of $279,006 for the period in question – then "such reduction will be taken into account in arriving at the amount of loss hereunder." In step one the actual net profit of $279,006 is deducted from the "but for" net profit of $7,350,126, resulting in the reduced $7,071,120 as "the net profit (or loss) which is thereby prevented from being earned." To this amount is added the $12,308,522 of "charges and expenses (excluding ordinary payroll)" for the same period in question.

Lexington's suggested formula is exactly the same with one major exception – Lexington would subtract "gross margin," a term nowhere mentioned in the Policy, which would result in zero for Conco's business interruption loss. An absurd interpretation indeed. It would seem clear that the "reduction" in the "but for" net profit ($7,350,126) resulting from the "complete or partial resumption of operations" is the actual net profit ($279,006) which was earned, and this is exactly what Legier & Materne have done.[1]

The literal wording of the Policy and the relevant legal authorities support Conco's calculation of its Business Interruption loss, as calculated by Legier & Materne. However, even if the Court were to see any merit at all to Lexington's interpretation, at best it can only be an alternative interpretation of an ambiguous provision leading to but one result under Louisiana Law – Conco's interpretation still must prevail as a matter of law!

---

[1] The flaws in Lexington's interpretation of the Policy language will be discussed in much greater detail when Conco's opposition to Lexington's motion is due to be filed on September 7.

654910_1.DOC

4

Conco is requesting the Court to grant its motion for partial summary judgment and rule before trial that Conco's interpretation of the Policy and methodology for calculating its Business Interruption loss is correct under the Policy. The jury will of course decide the numbers supporting the Business Interruption loss after listening to the evidence.

## General Authorities For Interpreting Insurance Policies Under Louisiana Law

It is well settled in Louisiana that the interpretation of an insurance policy including any of its exclusions is a question of law. *Christian Coll. v. Nat'l. Union Fire Ins. Co.*, 197 F. 2d 743 (5th Cir. 1999). Exclusions in insurance policies, such as the "ordinary payroll" exclusion relied on by Lexington, must be clear and unmistakable, and exclusions are strictly and narrowly construed *against the insurer*. *Calogero v. Safeway Insurance Co.,* 753 So.2d 170 (La. 2000); *Reynolds v. Select Properties, Inc.*, 634 So.2d 1180 (La. 1994); *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975 (La. 1991). The insurer has the burden of proving the applicability of any exclusions it relies on. *Standard Life Ins. V. Hughes*, 240 F.2d 859 (5th Cir. 1957).

The guiding principles in interpreting provisions of an insurance policy are:

> The test for construing an insurance policy is not what the insurer intended the words to mean, but, how the words would have been understood by a reasonable person in the shoes of the insured. The policy should be read as a layman would have read it and not as it might be analyzed by an insurance expert. The plain and obvious meaning of the words should be used in determining the coverage provided under the policy. All doubts and ambiguity should be resolved in favor of coverage.

*Dawson Farms L.L.C. v. Millers Mutual Fire Ins. Co.*, 794 So.2d 949 (La. App. 2nd Cir. 2000). Under Louisiana's "reasonable expectations" doctrine the Court should resolve disputes over language in insurance polices by ascertaining how a reasonable insurance policy purchaser would

construe the disputed provision at the time the insurance policy was purchased. *Louisiana Ins. Guar. v. Interstate Fire*, 630 So.2d 759, 764 (La. 1994).

If the policy is clear the Court is bound to interpret it as written. *Peterson v. Schimele*, 729 So.2d 1024 (La. 1999).

If the Court finds that a disputed provision is ambiguous, then it <u>must</u> adopt the interpretation favorable to the insured in favor of coverage and against the insurer. *Smith v. Matthews*, 611 So.2d 1377, 1379 (La. 1993).

Collectively considered these well established rules of construction mean that Lexington can overcome Conco's motion only by showing the Court that its interpretation of the Business Interruption coverage (by which it proposes to pay Conco nothing for its Business Interruption loss) is clear beyond any reasonable doubt. Thus, if the Court finds Conco's interperation to be clear or the Policy to be ambiguous, Conco's motion for summary judgment should be granted. In fact, Lexington's interpretation of the Business Interruption language is contrary to (i) the clear wording of the Policy, (ii) the jurisprudence, and (iii) the reasonable expectations of Conco in purchasing the Policy. In short, Lexington is *incorrect* beyond any reasonable doubt.

### The Formula in the Policy For Calculating Conco's Business Interruption Loss Calls for Adding Lost Net Profits And Charges and Expenses (Excluding Ordinary Payroll)

The Policy provides that Lexington will pay Conco for its Business Interruption loss adjusted on the basis of the formula explained above. This formula is clear on its face. To calculate the Business Interruption loss under the formula in the Policy, one adds together (a) as step one, "the net profit (or loss) which is thereby prevented from being earned" "and" (b) as step two, "all charges and expenses (excluding ordinary payroll), but only to the extent that they must necessarily continue during the interruption of business, and only to the extent to which they would have been incurred

had no loss occurred." If there could be any doubt about the application of this simple formula, it is set to rest by *Continental Insurance Company v. DNE Corporation*, 834 S.W. 2nd 930 (Tenn. Sup. Ct. 1992). Copy attached as Exhibit C. In *DNE* a similar Business Interruption policy provision was at issue. The policy in *DNE* provided coverage for loss of "business income" which was defined as:

> Business income means the: (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (b) continuing normal operating expenses incurred, including payroll.

Finding the application of this formula to be "obvious," the Tennessee Supreme Court concluded that to calculate the business income loss covered by the policy language the Court should simply add the net profit (or loss) to the normal operating expenses. The Court held:

> It seems obvious to us from the wording of the policy that in any given case, the amount of "business income" will be a number that is the sum of a second number ("net income," which may be either a net profit or a net loss) and a third number (continuing normal operating expenses incurred). The "business income" provision of the policy clearly indicates that the amount of business income is to be determined by adding the second number and the third number together. . . . This is the interpretation given the provision by the district court, and it is in accord with decisions in other cases involving similar issues.
>
> * * * *
>
> We therefore conclude that the amount of "business income" under the insurance policy provision involved in this case should be determined by adding the amount of "net income" and the amount of "continuing normal operating expenses." *Under this approach, if "net income" is a positive number (which will occur whenever there are net profits), the amount of "business income" will be the sum of two positive numbers, and the insured will be entitled to recover that amount.*

The *DNE* approach of adding together the two components of a Business Interruption loss (i.e., the lost net income and the expenses) is the same one set forth in the Policy issued by

654910_1.DOC

7

Lexington to Conco.[2] This approach is also the same one utilized by Conco's accountants Legier & Materne in calculating Conco's claim, all as explained above.[3]

### Conco Is Entitled To Attorneys' Fees And Statutory Penalties

Conco is alleging and will show at trial that Lexington has acted arbitrarily, capriciously, and without probable cause in failing to pay Conco's claims (not just Business Interruption) on a timely basis subjecting it to attorneys' fees and penalties under La. R.S. 22:658 (as amended in 2006) and penalties under La. R.S. 22:1220 (as amended in 2006).

If the jury finds that Lexington acted arbitrarily, capriciously and without probable cause in denying Conco's claims, Lexington "shall" be liable under La. R.S. 22:658 for a penalty of fifty percent (50%) of the amount found to be due from Lexington and attorneys fees and "may" also be

---

[2] Courts have consistently followed the *DNE* approach when calculating the business interruption loss covered by policies similar to the *DNE* policy and the Policy in this case, holding that the business interruption loss covered is determined by adding the net profit (or loss) to the normal operating expenses. *Dictiomatic, Inc. v. United States Fidelity & Guaranty Company,* 958 F.Supp. 594 (S.D. Fla. 1997) (citing *DNE* and holding that the business income loss is determined by adding the continuing normal operating expenses to the net profit or net loss); *Liberty Mutual Insurance Co. v. Sexton Foods Co., Inc.,* 854 S.W.2d 365 (Ark. Ct. App., Div. II, 1993) (quoting *DNE* and remanding to the trial court, instructing the trial court to add the net profit (or loss) to the normal operating expenses to determine the business income loss covered). After remand in *Liberty Mutual* the trial court was faced with a factual scenario identical to the one presented in this case – namely, the insured, who was seeking coverage for the loss of business interruption, showed that it had incurred continuing expenses during the business interruption and that it would have earned a net *profit* had the business not been interrupted. *Liberty Mutual Insurance Co. v. Sexton Foods Company, Inc.,* 1996 WL 144320 (Ark. Ct. App., Div. II, 1996). The trial court applied the *DNE* approach and added the net profit to the continuing expenses. *Id; see also A & S Corp. v. Centennial Ins. Co.,* 242 F.Supp. 584 (N.D. Ill. 1965) (holding that the business income loss covered under the business interruption policy equaled the insured's net profits plus expenses).

[3] Legier & Materne calculated Conco's "net profit (or loss) which is thereby prevented from being earned" by using the past-experience approach to calculating such lost profits as specified in subparagraph (3) of the Policy, quoted above, which is universally recognized as "the strongest and most reliable evidence of what a business would have done had the catastrophe not occurred." See *Finger Furniture Co. v. Commonwealth Ins. Co.*, 404 F.2d 312, 314 (5th Cir. 2005). As explained above, Legier & Materne calculated the step one amount to be $7,071,120. To this sum is added the "charges and expenses (excluding ordinary payroll)" (the sum of $12,308,522.00) for a total figure of $19,379,642. *See* Exhibit B, p. 7.

liable under La. R.S. 22:1220 for up to double Conco's damages and unpaid claims. *Calogero v. Safeway Ins. Co.,* 753 So.2d 170, 174 (La. 2000).

Lexington is requesting in its motion for partial summary judgment that the Court rule now that as a matter of law neither statute applies to Lexington because even if it has made a mistake in denying coverage, it did so in a subjective state of "legitimate doubt" and not through "capriciousness" or "arbitrariness".

Lexington cites *Calogero v. Safeway Ins. Co.,* 753 So.2d 170 (La. 2000) in support of its position. In *Calogero* the Supreme Court said:

> The determination that an insurer's handling of a claim is arbitrary and capricious is a factual finding which may not be disturbed unless manifestly erroneous. [Citations omitted]. We have described an insurer's actions as "arbitrary and capricious" when its willful refusal of a claim is not based on a good faith defense [citations omitted] or is unreasonable or without probable cause [citations omitted]. However, where the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties. [Citations omitted]. But, where an insurer is found to have acted arbitrarily, capriciously, or without probable cause, the insurer *shall* be liable for damages as a result of the breach, and *may* be liable for penalties not to exceed two times the damages or five thousand dollars, whichever is greater.

Lexington is ignoring that Conco is claiming in its motion for partial summary judgment and, if necessary, intends to show at trial, that the Business Interruption coverage it seeks to enforce (as well as the claims for lost inventory, damages to the Harahan facility and extra expenses) is *clear* under the Policy and that Lexington has no factual basis to show "legitimate doubts" about the coverage. Lexington's position that "gross margin" should be subtracted in the formula under the Policy from "the net profit (or loss) which is hereby prevented from being earned" (rather than the actual net profit earned, as was done) is not a "legitimate doubt" when the term "gross margin" nowhere appears in the Policy.

In the event that this Court, either by ruling now in favor of Conco on its motion for partial summary judgment, or in a jury charge during trial, determines that the Business Interruption provision (and the others in the Policy) contested by Lexington is clear in Conco's favor, then the protection from penalties which *Calogero* affords to an insurer with "legitimate doubts" about the meaning of its own policy is inapplicable, and other well-established Louisiana law comes into play. For example, in *Gulf Oil Corp. v. Mobile Drilling Barge*, 441 F. Supp. 1 (E.D. La.), *aff'd.*, 565 F. 2d 958 (5th Cir. 1978), the Court stated the Louisiana law that "the failure of an insurer to pay a claim based solely on the insurer's incorrect interpretation of language in the policy it wrote is deemed arbitrary, capricious, and without probable cause. Even if the language in question has never been litigated before, the risk of erroneous interpretation is that of the insurer." If this Court finds the Business Interruption coverage to be clear in Conco's favor, as Conco has argued, then Conco is also requesting the Court to rule that the requirement of proof of arbitrariness and capriciousness is satisfied and the penalty provisions of the two statutes are applicable as a matter of law.

This same ruling should also follow if the Court finds the Policy to be ambiguous, because in that case the ambiguity must be construed against the insurer and in favor of the insured finding coverage, meaning again that Lexington's claimed "legitimate doubt" is without a factual basis under the law. As this Court held in *Gulf Oil*, "the risk of erroneous interpretation is that of the insurer."

The sordid tale of Lexington's conduct in failing to adjust Conco's claims reasonably, including its position that Conco should recover zero on its business interruption claim, will be fully shown at trial.

Lexington also requests the Court to rule before trial that Conco cannot as a matter of law recover the double penalties provided in La. R.S. 22:1220 calculated on the basis of Conco's unpaid

654910_1.DOC

10

claims. Lexington cites *Calogero* and *Sultana Corp. v. Jewelers Mutual Ins. Co.*, 860 So.2d 1112 (La. 2003). Neither case supports Lexington. In *Calogero* the Louisiana Supreme Court affirmed an award of penalties under La. R.S. 22:1220 and attorneys' fees under La. R.S. 22:658 based on a finding that the insurer had been arbitrary and capricious in not paying the insured's claims. We do not find any holding in the *Calogero* case that resolves a legal issue as to whether an insured must suffer consequential damages to make a claim for penalties under La. R.S. 22:1220.

That issue was, however, taken up in *Sultana Corp. v. Jewelers Mutual Ins. Co.*, 860 So.2d 1112 (La. 2003) and decided favorably to Conco's position. In the *Sultana* case the insured had not made a claim for consequential damages but sought penalties nonetheless under La. R.S. 22:1220 because the insurer had acted arbitrarily and capriciously in refusing to pay its claims. The insurer argued that the statute's penalty provision only applied to the extent that an insured was claiming that a consequential damage claim had not been paid on a timely basis. The Supreme Court ruled for the insured holding that double penalties were covered by La. R.S. 22:1220 if the insured could show that the insurer acted arbitrarily and capriciously even though the insured had made no claim for any consequential damages.

The Court found that "actual damages need not be proven." This result is consistent with the purpose of the statute to impose on insurers a penalty when they breach their duty of fair dealing in the process of adjusting the insured's claims. The *Sultana* Court concluded that the penalty provision in 22:1220 would "ring hollow" and "do little, indeed if anything, to encourage timely payment in settlement" if the insured had to prove consequential damages in order to invoke the penalty provision. The message in the *Sultana* case is that the double penalty provision should be applied to Conco's claims.

Lexington's reliance in its memorandum on the unreported opinion of Judge Carl Barbier in *Pride v. American Security Insurance Co.*, Civ. A. 02-2748 (USDC E.D.3-26-03) is misplaced. Admittedly, Judge Barbier did construe La. R.S. 22:1220 to mean that in the absence of proof of damages the insured (after showing arbitrary and capricious conduct by the insurer) is limited to the alternative $5,000 statutory penalty. But his opinion appears outdated since it preceded the *Sultana* decision holding that a showing of consequential damages is not a requirement to recovery by an insured of double penalties of the unpaid claim.

Moreover, Conco suffered general or special damages beyond those claimed under the Policy due to Lexington's failure to pay Conco. *See* Pre-Trial Order, p. 11.

## **Conclusion**

Conco owes its survival from Katrina to a loyal and dedicated staff willing to work under extraordinary post-Katrina circumstances to save the company. No thanks to Lexington! Conco purchased the Policy to help it survive financially from a Katrina type calamity by having coverage for its business interruption and other losses. Yet Lexington has offered Conco zero – that's right, zero – for Conco's business interruption claim. Under Lexington's contorted interpretation of the Policy it is worthless for Conco to have purchased business interruption protection. Conco believes the Policy coverage for Business Interruption to be clear and requests this Court to consider putting the issue to rest before trial by granting Conco's motion for partial summary judgment. *See* proposed Order granting Conco's partial summary judgment attached as Exhibit D.

Alternatively, if the Court would consider it worthwhile before it rules on the issue to listen to live trial testimony as to Conco's Katrina ordeal, its expectations as to the need and purpose for the Business Interruption coverage and expert testimony about the calculation of Conco's Business Interruption losses in accordance with the formula in the Policy, the Court could defer a ruling on

both of the cross motions for summary judgment and revisit the issue when it comes time to instruct the jury.

                              **LEMLE & KELLEHER, L.L.P.**

                              By: /s/ Alan H. Goodman
                              **ALAN H. GOODMAN** (Bar #6131)
                              **WILLIAM R. FORRESTER, JR.** (Bar #5712)
                              **THOMAS M. BENJAMIN** (Bar #18562)
                              601 Poydras St., 2100 Pan-American Life Center
                              New Orleans, Louisiana 70130
                              Telephone: (504) 584-9419
                              Facsimile: (504) 584-9142
                              agoodman@lemle.com
                              Attorneys for Consolidated Companies, Inc.

## CERTIFICATE OF SERVICE

     I hereby certify that on the 31st day of August, 2007 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: John E.W. Baay II, Robert I. Siegel, and David B. Wilson.

                              /s/ Alan H. Goodman