UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CONSOLIDATED COMPANIES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-4700** |
| **LEXINGTON INSURANCE COMPANY** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Consolidated Companies, Inc.'s motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**.  (Document #49.)

**IT IS FURTHER ORDERED** that Lexington Insurance Company's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**.  (Document #37.)

### I. BACKGROUND

Lexington Insurance Company (Lexington) issued all risk policy No. LE 7478731 covering losses up to $25,000,000 for business interruption, expenses, and damage to real and personal property to Consolidated Companies, Inc. (Conco).  As a result of Hurricane Katrina, Conco's food distribution facility in Harahan, Louisiana, suffered damage.  Lexington made a general advance of $3,000,000 to Conco, but has not paid the business interruption claim.

Conco filed a complaint for breach of contractual obligations under the policy. Conco seeks penalties under La. Rev. Stat. 22:658 because Lexington has arbitrarily and capriciously failed to adjust and pay the claims in a timely manner. Conco further seeks penalties, alleging that Lexington has breached its duty of good faith in adjusting claims fairly and promptly in violation of La. Rev. Stat. 22:1220.

Conco and Lexington filed cross motions for partial summary judgment to resolve issues concerning the claims for business interruption coverage and penalties.

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).

### B. Business interruption under the insurance contract

The cross motions for partial summary judgment concern the following provisions of the policy concerning business interruption coverage:

BUSINESS INTERRUPTION

Business interruption means loss resulting from necessary interruption of business

conducted by the insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to real and/or personal property as covered herein.

If such loss occurs during the term of this policy, it shall be adjusted on the basis of the *actual loss sustained by the insured, during the period of restoration, consisting of the net profit (or loss) which is thereby prevented from being earned and of all charges and expenses (excluding ordinary payroll),* but only to the extent that they must necessarily continue during the interruption of business, and only to the extent to which they would have been incurred had no loss occurred.

Ordinary payroll is defined to be the entire payroll expenses for all employees of the insured except officers, executives and department managers.

The Company shall not be liable for any loss resulting from the time required to reproduce finished stock.  Finished stock shall mean stock manufactured by the insured which in the ordinary course of the insured's business is ready for packing, shipment, or sale.

   (1)  RESUMPTION OF OPERATIONS:  It is a condition of this insurance that if the insured could reduce the loss resulting from the interruption of business
       (a)  by a complete or partial resumption of operations, or
       (b)  by making use of other available stock, merchandise or location such reduction will be taken into account in arriving at the amount of loss hereunder, but only to the extent that the business interruption loss covered under this policy is thereby reduced.

   (2)  EXPENSE TO REDUCE LOSS:  This policy also covers such expenses as are necessarily incurred for the purpose of reducing any business interruption loss under this policy, provided such coverage shall not exceed the amount by which the business interruption loss covered under this policy is thereby reduced.

   (3)  EXPERIENCE OF BUSINESS:  In determining the amount of net profit (or loss), charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the insured's business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

   The interpretation of an insurance contract and its exclusions is a question of law.  See

Jarvis Christian Coll. V. Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa., 197 F.3d 742,746 (5th Cir.

2000). Under Louisiana law, the general rules of contract interpretation apply to determine the common intent of the parties to the contract. See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994). The intent of the parties as reflected in the policy determines the extent of the coverage. Id. The words of an insurance policy are given their "general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning." Id.

Conco contends that its business interruption loss is approximately $19,379,642. Conco argues that, pursuant to the policy, the calculation of the amount of loss consists of (1) the net profit which is prevented from being earned and 2) the charges and expenses (excluding ordinary payroll). Conco contends that, because it resumed operation, the net profit in step one is reduced by the net profit earned for the period. Applying these principles, the net profit that is prevented from being earned is approximately $7,071,120 [$7,350,126 (the net profit prevented from being earned), minus $279,006 reduction (the net profit earned during the restoration)], and the charges and expenses (excluding ordinary payroll) are $12,308,522, for a total business interruption loss of $19,379,642.

Lexington argues that Conco's interpretation of the business interruption provision results in a massive windfall. Lexington argues that Conco resumed operations and was able to generate profits during the period of restoration; therefore, a reduction must be taken into account for the gross margin earned from the resumption of operations. The formula proposed by Lexington is as follows: "but for" profit, plus charges and expenses (excluding ordinary payroll), minus gross margin (sales minus the cost of sales). Lexington argues that the only

difference between Conco's formula and its formula is that Lexington argues that the reduction due to the resumption of operations should be the gross margin, and Conco argues that it should be net profit.  Lexington and Conco agree that the only issue before the court is the proper formula to measure the loss because the amount of each element of the formula has not yet been finalized by either party.

The clear language of the policy states that the loss "shall be adjusted on the basis of the *actual loss sustained by the insured, during the period of restoration, consisting of the net profit (or loss) which is thereby prevented from being earned and of all charges and expenses (excluding ordinary payroll),*" subject to certain stated limitations.  The actual loss determined in step one, consisting of the net profit (or loss) that is prevented from being earned, is then adjusted by reducing that calculation by the amount of net profit that was earned during the restoration.

Applying the language of the policy, the court concludes that the measure to be used to reduce the business interruption loss is the net profit, not the gross margin. Accordingly, Conco's motion for partial summary judgment is granted, and Lexington's motion for partial summary judgment is denied as to the formula to be applied under the policy to calculate the business interruption loss.

## C.  Measure of penalties

Conco argues that, if the jury finds that Lexington acted arbitrarily, capriciously, and without probable cause in failing to pay Conco's claim on a timely basis, Lexington shall be liable under La. Rev. Stat. 22:658 for a penalty of 50% of the amount found to be due from

Lexington and attorneys' fees.   Conco further contends that Lexington may be liable under La. Rev. Stat. 22:1220 for up to double Conco's damages and unpaid "claims."

Lexington contends that, if it is ultimately determined that Lexington owes payment under the business interruption coverage, its decision not to pay Conco's claim is neither arbitrary nor capricious and should not be subjected to penalties under La. Rev. Stat. 22:658 or La. Rev. Stat. 22:1220.[1]  Lexington argues that if its interpretation of the business interruption provision is reasonable, it cannot be subject to penalties.

Lexington further argues that, even if it is found to have violated La. Rev. Stat. 22:1220, it is not subject to a penalty equal to two times Conco's entire "claim" for damages.  Lexington contends that the statute is applicable only after a showing of damages actually suffered as a result of a breach of the insurer's duties.  Lexington argues that, in the absence of proof of the amount of consequential damages resulting from a violation of 22:1220, courts impose the alternate $5,000 penalty.

In Sultana Corp. v. Jewelers Mutual Ins. Co., the Supreme Court of Louisiana addressed the issue of whether "actual damages must be proven before penalties may be assessed under

---

[1]   There is a close relationship between the conduct described in La. Rev. Stat. 22:658 and 22:1220.  See Dixon v. First Premium Ins. Group, 934 So.2d 134, 143 (La. Ct. App. 2006). "Where La. Rev. Stat 22:1220 provides the greater penalty, it supersedes La. Rev. Stat. 22:658, such that the insured cannot recover penalties under both statutes.  However, because La. Rev. Stat. 22:1220 does not provide for attorney fees, the insured is entitled to recover the greater penalties under its provisions and attorney fees under La. Rev. Stat. 22:658 for its insurer's arbitrary or capricious failure to timely pay his claim after receiving satisfactory proof of loss." Id.

22:1220(C)."[2] 860 So.2d 1112, 1115 (La. 2003). "[S]tatutes subjecting insurers to penalties, such as La. Rev. Stat. Ann 22:1220, are considered penal and, as such, should be strictly construed." Id. at 1117.

Section 22:1220(A) imposes a duty of good faith and fair dealing on insurers. [An] insurer breaches the duty of good faith and fair dealing if it commits one of the acts enumerated in 22:1220(B). Id. at 1118 (citing Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co., 643 So.2d 242 (La. Ct. App. 1994)). Subsection (C) of La. Rev. Stat. 22:1220 stipulates the penalties which may be awarded for an insurer's breach of its duty to perform any of the acts enumerated in Subsection (B). If an insurer commits any one of the acts in 22:1220(B), a discretionary award of penalties may be imposed under subsection (C) without a showing of damages. Id. at 1118-19.

Thus, under subsection (C), Lexington may be subject to penalties up to an amount not to exceed two times the "damages sustained" or five thousand dollars, whichever is greater. This language clearly refers to damages sustained as a result of the insurer's refusal to pay. Accordingly, Lexington's motion for partial summary judgment on this issue is granted.

---

[2]   La. Rev. Stat. 22:1220(C) provides:
   In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

### III. CONCLUSION

Conco's motion for partial summary judgment is granted as to the formula to calculate the loss under the business interruption provisions of the policy. The measure to be used to reduce the business interruption loss is the net profit, not the gross margin.

Lexington's motion for partial summary judgment is granted as to the measure of penalties if the jury finds that it acted arbitrarily and capriciously in its decision not to pay Conco's claim. Lexington may be subjected to penalties based on the "damages sustained" as a result of the insurer's failure to pay or five thousand dollars, whichever is greater.

New Orleans, Louisiana, this  11th  day of September, 2007.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**