UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CONSOLIDATED COMPANIES, INC.** | * | **CIVIL ACTION NO. 06-4700** |
| | * | |
| **VERSUS** | * | **SECTION "S"** |
| | * | **MAG. 1** |
| **LEXINGTON INSURANCE COMPANY** | * | |
| | * | **JUDGE MARY ANN VIAL LEMMON** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF CONSOLIDATED COMPANIES, INC.
IN OPPOSITION TO LEXINGTON INSURANCE COMPANY'S
<u>MOTION TO REOPEN DISCOVERY</u>**

Consolidated Companies, Inc. ("Conco") files this Memorandum in Opposition to Lexington Insurance Company's ("Lexington") Motion to Reopen Discovery ("Lexington's Motion").

<u>**Introduction**</u>

Lexington's Motion is its latest attempt to try to take advantage of its own shenanigans to try to pound Conco into submission by increasing the financial burden of this litigation. Lexington's reputation for this modus operandi toward its insureds is no secret among some attorneys. Though such an approach to claims litigation may work on some fragile or struggling insureds, it has not worked and will not work on Conco. If anything, Conco's resolve has grown stronger.

In this memorandum Conco is called on once again to incur the expense of cataloging Lexington's prior conduct. Please excuse us if we are sounding like the proverbial broken record. This use of Conco's limited resources is particularly distasteful since the district court already entered an order on October 31, 2007 denying an earlier attempt by Lexington to reopen discovery. Lexington is now asking, in an untimely manner, for reconsideration of the district court's earlier rejection of Lexington's request to reopen discovery. How quickly it has forgotten the district court's earlier order (discussed below and attached as Exhibit R) and the fact that it stated at the pre-trial conference on August 27, 2007 that it was ready for trial.

Indeed, the pre-trial order provides:

> The pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

Certainly there is no "manifest injustice" here. Nor is there even good cause for the reasons to be explained.

Conco cannot be blamed for its ill-feeling. Maybe this protracted litigation is the modus operandi for the way Lexington conducts its business. But for Conco, Lexington's conduct has cost it its trial date (September 17, 2007), not to mention Lexington's refusal to agree to a reasonable trial date thereafter until 9 months later (after earlier telling the district court it could go to trial in October or November 2007), as well as the substantial and unnecessary attorneys' fees incurred already in opposing Lexington's earlier motions to extend deadlines and the future expenses which will be incurred through Conco's duplicative preparation when this case eventually goes to trial in late June 2008.

## Lexington's Motion Is Procedurally Defective And Has No Merit

**A.     No Rule 37.1E Certificate Was Filed**

As an initial objection, no Local Rule 37.1E Certificate accompanied Lexington's Motion. In its absence, this court should know that in response to Lexington's Motion, Conco's counsel (Alan Goodman) attempted in good faith to work out Conco's objections to Lexington's Motion by agreeing to Lexington's request for private mediation provided that Lexington would withdraw its Motion without prejudice pending the outcome of the mediation.[1] Lexington declined. Understandably, Conco did not want simultaneously to mediate and to be opposing Lexington's Motion. In addition, Mr. Goodman requested that Lexington provide him with some indication in writing of the specific information Lexington wanted if additional discovery were to be conducted to see if there could be resolution. (See Goodman e-mail dated December 22, 2007 attached as Exhibit A). Mr. Goodman never got a response to his e-mail.[2]

---

[1] Before Lexington filed its Motion, Conco had declined Lexington's request for private mediation, similar to counsel's response to the Magistrate's endeavors in this regard. However, on reflection and after considering the district court's request to try to settle, Conco decided to try mediation once more. Lexington declined.

[2] Actually, a response was received after this opposition was prepared, and it is attached as Exhibit AA. In anticipation that Lexington will file a reply memorandum arguing why it needs this additional discovery, Conco will address each request in this footnote to show why it is either duplicative, irrelevant or unnecessary. Moreover, as discussed in the text below more fully, if such discovery were allowed, it would no doubt follow that Lexington next would ask that the trial exhibit books be changed (which already consist of two boxes for each set and which have already been given to the district court for trial), that the witness lists be changed, and that the pre-trial order be changed (which has already been signed by the parties and the district court). All of this would cost Conco hundreds of thousands of dollars more while it continues to try to operate its business still recovering from the storm and while Lexington still holds tens of millions of dollars it owes to Conco.

As to each request for more discovery:

1. Mr. Kurzweg's deposition has already been taken; he would be the Rule 30(b)(6) designee for Conco; and all of the topics listed by Lexington for his Rule 30(b)(6) deposition were

Unfortunately, the problems with Lexington's request to reopen discovery go far beyond Lexington's non-compliance with Rule 37.1E. The Memorandum in support of Lexington's Motion is full of statements designed to create a false impression that Lexington is somehow a victim of a

---

already covered in his prior deposition. These topics were also covered in the other depositions of Conco employees.

2. Mr. Wilkinson no longer works for Conco; he is employed in Houston where he moved after the storm with his family; and Conco previously told Lexington that it would have to subpoena Mr. Wilkinson and take his deposition in Houston. Lexington chose not to do so, probably because other Conco witnesses covered the relevant topics at their depositions. That decision was previously made by Lexington when there was still time to depose Mr. Wilkinson before the extended discovery cutoff.

3. The same applies to Mr. Brashier: The primary officer at Gallager in charge of Conco's account was deposed by Lexington; he answered all relevant questions; and Conco previously told Lexington that it would have to subpoena Mr. Brashier and travel to take his deposition. Lexington chose not to do so prior to the discovery cutoff.

4. Messrs. Guiterrez and Schaffer worked for subcontractors of the roofing contractor, FICON, Inc. Mr. Hirschi, president of FICON, was deposed at length and answered all relevant questions. His expert report and supporting documents were given to Lexington in late May 2007, and the two subcontractors were identified in Mr. Hirschi's report. Once again, Lexington would have had to subpoena these two gentlemen for their depositions and chose not to do so prior to the discovery cutoff. Interestingly, Lexington's own expert agrees with the scope of work and the reasonableness of the costs for repairing Conco's warehouse roof. These witnesses, like the other additional ones, would add nothing to what Lexington already knows from its own expert and from FICON.

5. Ernst & Young ("E&Y") are no longer Conco's accountants for reasons unrelated to this litigation. Lexington has known of E&Y's very limited involvement in this matter since before this litigation even started. Questions about Conco's claims have been the subject of every deposition. It escapes Conco what E&Y could possibly add in the way of new information, since every document requested by Lexington was voluntarily given it before the litigation started (consisting of over 14,000 pages). Lexington previously decided not to depose E&Y, and there is no reason to do so now.

6. The written discovery being requested was previously ruled upon by this Court, and that ruling was not appealed and is final. Such discovery would be burdensome at this late stage and would add no new information.

Interestingly, Lexington does not seek to re-depose Mr. Legier, even though it complains about the supplement to his expert report as being the "most significant reason" to reopen discovery, all of which shows that that argument is a red herring, as discussed later in the text below in detail.

combination of (i) an unreasonably compressed discovery schedule, (ii) delays created by Conco in responding to Lexington's discovery requests, and (iii) a supplement to Conco's Legier & Materne expert report lowering the amount of Conco's business interruption claim. As the following discussion shows, nothing of the sort is true.

**B.     Lexington Has Not Been Prejudiced By A Compressed Discovery Schedule**

An examination of Lexington's track record of conducting discovery in this case shows that it has not been the victim of a "compressed discovery schedule."

On January 26, 2007 the Court, at a scheduling conference, set a discovery cutoff date of July 24, 2007, a pre-trial conference for August 23, 2007, and trial for September 17, 2007. The order made it clear that discovery had to be *completed* by the cutoff date. The scheduling order spread out the various dates to give the parties plenty of time to provide expert reports and complete discovery in time for the pre-trial conference and trial. (copy of Order attached as Exhibit B).

Conco started its discovery to allow it ample time for completion within the schedule. On April 10, 2007 Conco served Interrogatories and a Request for Documents on Lexington. Lexington did not respond. Conco filed a Motion to Compel together with a Motion for Expedited Hearing.

The Court granted Conco's Motion for Expedited Hearing and its Motion to Compel and on its own initiative, as a result of Lexington's delay in timely responding to discovery, extended the discovery cutoff date until August 10, 2007 (copy of Order attached as Exhibit C) and the dates for expert reports.

Lexington still did not adequately respond to Conco's Interrogatories and Request for Production of Documents even after being ordered by the Court to do so. Consequently, on June 6, 2007 Conco had to file a Second Motion to Compel and another Motion for Expedited Hearing in

5

which it requested sanctions because of Lexington's delay in what should have been routine discovery. In its Reply Memorandum filed on June 13, 2007 in Support of its Second Motion to Compel Conco made it clear that *time was of the essence.* (copy attached as Exhibit D).

After the Court granted Conco's Second Motion to Compel, Conco finally got answers to its interrogatories on June 28, 2007, some two and a half months after they were served. In the meantime, Conco's counsel (William Forrester) by e-mail on May 25, 2007 asked Lexington's counsel for dates for deposition scheduling. (copy of e-mail attached as Exhibit E). By return e-mail Lexington's counsel promised a prompt reply. (e-mail attached as Exhibit F). But Conco did not receive any deposition dates from Lexington's counsel until *a month later* and then only after Conco threatened to bring the matter before the Magistrate. (see e-mails exchanged on June 26, 2007 attached as Exhibit G).

Having received no dates from Lexington's counsel in response to its e-mail requests and to get going on depositions, on June 6, 2007 Conco unilaterally noticed the depositions of Lexington witnesses for later in June and early July. (copy of Notice attached as Exhibit H). Conco received no cooperation from Lexington in complying with the Notice, and none of Lexington's witnesses appeared for their noticed depositions. Conco then served a Second Notice to take depositions. (copy attached as Exhibit I). Lexington still would not cooperate and refused to produce its CPA-expert and its in-house claims personnel in New Orleans, creating the necessity for Conco to serve out of state subpoenas for depositions taken in Boston, Massachusetts and Providence, Rhode Island. After further e-mails by Conco's counsel (William Forrester) putting pressure on Lexington to get the depositions scheduled and completed, all of Conco's depositions were taken on time. (copies of e-mails attached as Exhibits J, K & L).

Conco's discovery was completed within the scheduling order and it was ready for trial on time. Lexington had received Conco's expert reports and supporting documentation months earlier on May 31, 2007.

Lexington chose to take the depositions of Conco's witnesses in August 2007 during the remaining days of the discovery period. (See Lexington's Notice of Depositions attached hereto as Exhibit M).[3]

Despite the late deposition scheduling by Lexington and Lexington's non-cooperation previously, Conco *voluntarily* produced (at no expense to Lexington) its out of town witnesses (Ronny Sternfels, Jr. and Charles Hirschi) in New Orleans for the convenience of Lexington's counsel and to help complete the depositions within the court's schedule.[4]

On July 20, 2007 Lexington had served by mail Interrogatories and a Request for Documents on Conco. This discovery contained the type of broad requests for information and documents usually undertaken early in the case. Conco had previously produced over 14,000 pages of documents to Lexington at its request. The written discovery called for interrogatory responses and the production of documents after the discovery cutoff date in violation of the scheduling order. Conco filed timely objections to the Interrogatories and Request for Production of Documents.

To make matters worse, on August 10, 2007, the last day of the discovery period, Lexington served subpoenas duces tecum on FICON, Inc., Ernst & Young, L.L.P., and Legier & Materne, and

---

[3] Lexington acknowledges that Conco refused to meet further to discuss the claim in the spring of 2007 (Lexington's Mem. at 3) but then argues that it deferred doing discovery in "the hopes of a meeting . . . in the spring of 2007." (*Id.* at 4). Its argument makes no sense since it knew in the spring of 2007 Conco would not meet further without attorneys present. So the Court understands, Conco's personnel were busy trying to operate their business which had been severely impacted by Hurricane Katrina.

[4] Lexington's insinuation that it had requested additional documents by subpoena duces tecum of these witnesses but the deponents failed to produce them is not accurate.

on August 15, 2007 it served a subpoena also on Arthur J. Gallagher Risk Management Service, Inc. ("A.J. Gallagher"), calling for the production by the subpoenaed parties of voluminous documents in New Orleans on August 24, 2007, which was *after the expiration of the discovery period and the scheduled pre-trial conference*. Objections to this dilatory discovery on the subpoenaed parties were filed by Conco and the subpoenaed parties.

On September 12, 2007, Magistrate Shushan denied Lexington's Motion to Compel Discovery on the grounds that Lexington's discovery was too late under the scheduling order. (See Order attached as Exhibit N). No appeal was taken by Lexington. These orders are now final.

If Lexington had needed more time to conduct discovery past the cutoff date, it could have made a timely request to the Court for permission to extend the discovery cutoff date a second time. It did not. Of course, Conco would have had an opportunity to express any objections at that point. Lexington also could have utilized provisions in FRCP 33 and 34 and requested the Court to shorten the response period for their Interrogatories and Requests for Production of Documents. It did not.

Absent Court permission, FRCP 29 prohibits "stipulations [between counsel] extending the time provided . . . if they would interfere with any time set for completion of discovery . . ." Conco complied with the Court's rules.

The same objection to the timing of Lexington's Interrogatories and Requests for Production of Documents mentioned above applied to the subpoenas served on FICON, Inc., Ernst & Young, L.L.P., Legier & Materne, and A.J. Gallagher. These four subpoenas called for a burdensome production of documents on August 24, 2007, past the discovery cutoff date and the date for submission of the pre-trial order. Ironically, the subpoenas served on FICON, Inc., Legier & Materne, and A.J. Gallagher called for them to provide voluminous documents after their depositions had been completed. No subpoenas were served on these parties before their

8

depositions, and there was no agreement by Conco or the subpoenaed parties to supply any additional documents. In fact, Conco's expert witnesses, Ficon, Inc. and Legier & Materne, had voluntarily already supplied Lexington with the documentation referenced in and supporting their expert reports.

**C.      Lexington's Conduct Caused Conco To Lose Its Trial Date**

Lexington's conduct has not been limited to discovery. According to the scheduling order all dispositive motions were to have been set and heard on or before July 24, 2007. Despite the fact that long before this motion cutoff date Lexington knew Conco's position on all coverage issues including Conco's claim for business interruption, Lexington waited until after the July 24, 2007 motion cutoff date to ask that it be extended so that it could assert (by way of a motion for partial summary judgment) a challenge to Conco's interpretation of the business interruption coverage. As reflected in Lexington's Motion and Supporting Memorandum to Extend Deadlines filed on August 10, 2007 (attached as Exhibit O), Lexington asked the court to forgive the missed deadline and rule on its dilatory motion for partial summary judgment because that would "greatly increase the possibility of settlement." Over Conco's objection, Lexington obtained approval from the trial judge to file its motion for partial summary judgment late.

At a time when Conco's counsel had planned to be actively preparing for trial, memoranda and oral argument for and against Lexington's motion and Conco's cross motion for partial summary judgment were presented to the court on September 11, 2007, just four working days before trial.

On September 11, 2007, the trial court ruled against Lexington (and in favor of Conco) on the interpretation of the business interruption coverage advocated by Lexington in its motion for partial summary judgment. (See Order attached as Exhibit P).

Having lost its motion for partial summary judgment on the business interruption coverage issue, Lexington was a sore loser. It apparently forgot about its earlier representations to the court that a ruling on the motion would promote judicial economy and simplify the issues for the trial scheduled to begin on September 17, 2007. Instead of proceeding to trial, on Friday, September 14, 2007 (the last working day before the trial was to commence) Lexington moved to continue the trial so that it could apply to the Fifth Circuit for permission to take an interlocutory appeal of the district court's summary judgment ruling on the business interruption issue.

Over Conco's objection, the district court granted Lexington's request to apply for an interlocutory appeal and continued the trial pending the outcome of the appeal. (See Order attached as Exhibit Q).

In the Chamber's conference on September 14, however, the district judge told Lexington that the Court would not reopen discovery (when Lexington requested she do so).

Lexington's appeal to the Fifth Circuit was not successful, and Conco was left with an aborted trial date and substantial legal bills for the trial preparation time and expense. Far from improving the prospects for settlement, Lexington's unsuccessful motion and appeal drew the parties even further apart and there have been no meaningful settlement discussions since.

In its Order entered on October 31, 2007, the district court set a new trial date on June 30, 2008, and made it clear that "all deadlines set forth in the scheduling order entered on January 26, 2007 shall remain in effect." (See Order attached as Exhibit R).

Showing no remorse for busting the September trial date and for later refusing to a continued trial date any earlier than nine months later on June 30, 2008, Lexington now argues in its Memorandum that the continuance of the trial date should militate in favor of a reopening of discovery since the pressure of final trial preparation has been postponed. It would add insult to

10

injury for Lexington to now obtain a reversal of the district court's order of October 31, 2007 and obtain a reopening of discovery – which it has already had every opportunity to complete on a timely basis. Lexington would be benefitting from postponing the trial date at the expense of Conco.

Moreover, if discovery were reopened, what would happen to the seven sets of trial exhibits (each set is two boxes), the witness lists, and the pre-trial order, all of which have already been finalized for trial?[5] This process, if reopened, could cost Conco hundreds of thousands of dollars more than it has already spent trying to recoup what it is due from Lexington. The trial delay has already placed Conco, a privately-owned company severely hurt by Hurricane Katrina, under tremendous strain, while Lexington continues to hold and enjoy the tens of millions of dollars it owes Conco.

The district court has seen the injustice first-hand, including Lexington's refusal to agree to a continued trial date any sooner than June 30, 2008, and has twice now ruled that discovery will not be reopened – first orally at the September 14 Chambers conference and later in writing in its October 31 order (Exhibit R hereto).

### D. The Supplement To The Legier & Materne Report Does Not Justify A Reopening Of Discovery

According to Lexington's Memorandum the "most significant reason" given for reopening discovery is that it needs additional information and documents to evaluate the report of Conco's CPA/expert, Legier & Materne ("Legier report") because it was supplemented after its initial filing. (see Lexington Memorandum p.8). This argument is a red herring.

---

[5] Conco has never represented, or believed, that this case did not involve extensive documents. But see Lexington's Mem. at 3.

11

The Legier report was provided to Lexington on May 31, 2007 in accordance with the scheduling order. That report listed all of the documentation used in preparing the report and stated that all of the documentation would be provided to Lexington upon request. Notwithstanding that Legier & Materne received no request, it still sent to Lexington's counsel on June 8, 2007 the detailed work sheets used in connection with the Legier report. On July 5, 2007 Lexington's counsel was further provided with binders containing about 500 pages of Conco's financial records and the work sheets relied on by Legier & Materne in preparing its report. (See copy of Legier letter dated August 22, 2007 sent in response to Lexington's dilatory subpoena attached as Exhibit S).

On July 6, 2007, Lexington's expert/CPA, Jean Lehman, provided her expert report. As can be seen from a copy of Ms. Lehman's 185 page report (copy attached as Exhibit T), it contains lengthy and extremely detailed figures calculating Lexington's liability for Conco's claims against Lexington. This report was based on an analysis of over 14,000 pages of supporting documents which had been supplied by Conco and with the benefit of the Legier report.

Nowhere in the Lehman report is there any identification of any documents that Ms. Lehman lacked which prevented her from evaluating and calculating all of Conco's claims and rebutting the conclusions in the Legier report.

Moreover, when questioned about whether she needed more documents from Conco to evaluate its claims, she testified as follows (see Exhibit U attached):

> Q. Okay. Do you recall ever informing Scott Stephenson [Conco's in-house accountant] that he had not adequately sent you sufficient documentation of CONCO's claim?
> A. There have been various correspondences where we let Scott know what information we were looking for.
> Q. Did he respond to those communications?
> A. Yes.

Q. Did you inform him promptly if he had not adequately responded to your request for information?
A. I would say that following the last submission of documents that was provided and the last submissions of claim that were provided, we did not follow up to request additional information.

(Lehman deposition pp 34-35).

* * * *

Q. Did you let Mr. Stephenson know in any specifics if there was anything you were still missing?
A. No.

(Lehman deposition p 36).

* * * *

Q. Would it be fair to say that as of June 4, 2007 you felt as though you had everything that you needed in order to perform whatever functions you intended to perform?
A. No.
Q. Well, what else did you need?
A. Well, at that point we were reviewing the documents that had been received with their letter.
Q. Okay. At any point thereafter, did you conclude that you needed more?
A. Yes.
Q. Could you tell me what you needed?
A. Profit and loss statement data.
Q. For what period of time?
A. April 2006 and later. But we concluded that we did not need to request that information based on our discussions with Lexington.

(Lehman deposition pp 36-37).

Thus, questions or objections which Lexington's CPA had to the conclusions in the Legier report were known and evaluated by Lexington's expert/CPA long before the discovery cutoff date.

Lexington's counsel has deposed Conco's CPA/experts. At the time of the depositions of the two Legier & Materne CPAs, William Legier and Jacqueline Tuthill, Lexington's counsel had already had full access to the documents utilized by Legier & Materne in preparing their report. No subpoena duces tecum was served on Legier & Materne prior to their depositions for any more documents.

During the deposition of William Legier (taken on a Friday) Lexington's counsel made some good points which lead to Mr. Legier concluding that certain figures in his report should be

668425_1.DOC

adjusted downwards resulting in lesser damages for Conco of more than $1.5 million. Mr. Legier's deposition was taken on Friday, August 3, 2007. By the next Tuesday, August 7, 2007, the Legier report had been revised and given to Lexington's counsel by hand, together with a chart showing the downward adjustments. Later that week Lexington's counsel deposed Jacqueline Tuthill (Mr. Legier's partner who is also listed as an expert for Conco) and thoroughly reviewed with Ms. Tuthill at her deposition the reasons and bases for the downward adjustments in certain figures which resulted in the lesser damages of over $1.5 million.

Lexington's counsel was satisfied at the time, did not complain at all over the downward adjustments in the damages, and did not request to retake Mr. Legier's deposition to cover the changes. Frankly, if a request had been made to re-depose Mr. Legier limited to the downward adjustments, Conco would have likely agreed, but it was apparent to all that Ms. Tuthill was intimately familiar with the figures in the Legier report and was more than able, if not moreso than Mr. Legier, to explain everything for Lexington's counsel.

It is also noteworthy that Lexington's expert, Ms. Lehman, attended the depositions of both Mr. Legier and Ms. Tuthill (by telephone).

So that the Court understands more fully these issues, Conco is attaching as exhibits the following:

Exhibit V – Legier report dated May 31, 2007

Exhibit W – Legier report as revised August 7, 2007

Exhibit X – two pages showing the changes in the figures as revised August 7, 2007 which were handed to Lexington's counsel at the time

Exhibit Y – Mr. Legier's deposition

Exhibit Z – Ms. Tuthill's deposition

In reviewing these figures and information, it is noteworthy that only two basic figures changed in the Legier report: First, the "But For Profits" were reduced from $8,247,449 downward to $7,350,126; second, the "Costs and Expenses" were reduced from $12,953,899 downward to $12,308,522. Both adjustments were for the benefit of Lexington, and the adjustments combined resulted in lesser damages for business interruption of $1,542,700. These adjustments also lead to other figures changing downward in the revised report. Importantly, not a single word in the Legier report was changed (other than some figures), and the methodology and conclusions in the Legier report remained exactly the same.

It is no wonder that Lexington has not complained previously about the changes in the Legier report. Indeed, Lexington does not even now ask to take the deposition of Mr. Legier again. (See Lexington's recent e-mail attached at Exhibit AA).

As previously stated, Lexington's complaints ring hollow and are a red herring in their effort to achieve other objectives.

The deadlines in the scheduling order to complete discovery and to file motions expired long ago, and the district court's Order of October 31, 2007 says that "all deadlines set forth in the scheduling order entered on January 26, 2007 shall remain in effect." Lexington has not presented any legitimate reason why it needs to reopen discovery to ask additional questions relating to the business interruption figures in the Legier report as revised.

## Conclusion

It is obvious that if Lexington's new fishing expedition were permitted, a significant ripple effect would likely occur such as (i) more depositions and more witnesses, (ii) more documents and more exhibits, (iii) new or modified expert reports and expert discovery, (iv) new exhibit books for trial, and (v) a new pre-trial order – all no doubt costing Conco hundreds of thousands of dollars

15

more. The issues in this case are framed; there is no need "to narrow the issues for trial" as Lexington argues. (Lexington's Mem. at 8). Conco requests that the Court deny Lexington's Motion and maintain this Court's Order of October 31, 2007 in effect.

**LEMLE & KELLEHER, L.L.P.**


By: /s/ William R. Forrester, Jr.
**ALAN H. GOODMAN** (Bar #6131)
**WILLIAM R. FORRESTER, JR.** (Bar #5712)
**THOMAS M. BENJAMIN** (Bar #18562)
601 Poydras St., 2100 Pan-American Life Center
New Orleans, Louisiana 70130
Telephone: (504) 584-9419
Facsimile: (504) 584-9142
agoodman@lemle.com
Attorneys for Consolidated Companies, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of January, 2008 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: John E.W. Baay II, Robert I. Siegel, and David B. Wilson.

/s/ William R. Forrester, Jr.