# Lemle & Kelleher, L.L.P.

## Consolidated Companies, Inc.
### vs.
## Lexington Insurance Company

### Prepared For:

### Allan H. Goodman, Esquire



THE MARK OF EXCELLENCE



EXHIBIT

W



LEGIER

MATERNE
*apac*
Consultants and CPAs

May 31, 2007
(As Revised August 7, 2007)

**DELIVERED BY HAND**
Alan H. Goodman, Esquire
Lemle & Kelleher, L.L.P.
Attorneys at Law
21st Floor, Pan-Am Life Center
601 Poydras Street
New Orleans, LA 70130

### RE:  Consolidated Companies, Inc. vs. Lexington Insurance Company

Dear Mr. Goodman:

### SCOPE

You have asked that we study and analyze information provided to us in connection with the above referenced matter and provide our opinions as to the amount of business interruption loss, extra expenses and property damages sustained by Consolidated Companies, Inc. ("Conco" or the "Insured"), along with the bases and reasons for these opinions, given a restoration period from August 29, 2005 through November 30, 2006 (the "Period of Restoration").

### BACKGROUND

We understand that on August 29, 2005, Conco sustained damages to its facility located in Harahan, Louisiana (the "Harahan Warehouse") as a result of Hurricane Katrina (the "Hurricane").   In March 2006, Conco submitted its claim for damages resulting from the Hurricane (the "Claim") covered under its insurance policy dated August 2005 (the "Policy") to its insurer, Lexington Insurance Company ("Lexington" or the "Insurer").   Subsequently, Conco supplemented the Claim with additional information.   The Insurer has made one payment totaling $3 million to Conco in connection with the Claim.

Alan H. Goodman, Esquire
May 31, 2007
Page 2

## SUMMARY OF DOCUMENTS AND INFORMATION

In the course of this engagement, we have studied and analyzed the following documents and information, which have been provided to us to date:

- Detailed business interruption loss, property damage and extra expense calculations prepared by Conco and submitted to Lexington in March 2006, as well as supplements and documents in support thereof

- Books and records of Conco, including detailed financial statements by account, budgets, and detailed supporting documents and analyses generated by Conco's accounting system

- Complaint, Answer and Interrogatories and Requests for Document Production filed in this matter

- Interviews with Conco's officers and employees, including Victor J. Kurzweg, III, R. Scott Stephenson, Peter Algero, Jr. and David Wilkinson, and tours of Conco's corporate and Harahan operations

- Conco's insurance policy issued by Lexington

- Other documents and information provided by the parties in connection with this matter

The support documents, including the work papers and reference report binder, are voluminous, are incorporated herein, and will be made available to Lexington.

This report may only be used in connection with this matter. It is not intended for, and may not be used for, other purposes or by anyone not directly involved in this matter. It is based upon information provided to us to date. As of this date, we have not been provided with any documents or information from Lexington regarding its calculation or evaluation of the Claim. Accordingly, to the extent that additional information is produced in connection with this matter, this report may be subject to update. The curriculum vitae of William R. Legier and Jacqueline C. Tuthill and a listing of previous deposition and trial testimony are attached. The compensation to be paid in connection with this engagement will be based on rates ranging from $75 to $345 per hour.

Alan H. Goodman, Esquire
May 31, 2007
Page 3

## BASES AND REASONS FOR OPINIONS

In connection with our study and analysis of the documents and information set forth above, we note the following as the bases and reasons for our opinions:

### Business Interruption Loss -

Business Interruption is addressed in the Policy as follows:

"*Business Interruption means loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein.*

*If such loss occurs during the term of this policy, it shall be adjusted on the basis of the actual loss sustained by the Insured, during the period of restoration, consisting of the net profit (or loss) which is thereby prevented from being earned and of all charges and expenses (excluding ordinary payroll), but only to the extent that they must necessarily continue during the interruption of business, and only to the extent to which they would have been incurred had no loss occurred.*

*Ordinary payroll is defined to be the entire payroll expenses for all employees of the Insured except officers, Executives and department managers.*

. . .

*(1) RESUMPTION OF OPERATIONS:  It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business,*

*(a) by a complete or partial resumption of operations, or*

*(b) by making use of other available stock, merchandise or location such reduction will be taken into account in arriving at the amount of loss hereunder, but only to the extent that the Business Interruption loss covered under this policy is thereby reduced.*

*(2) EXPENSE TO REDUCE LOSS:  This policy also covers such expenses as are necessarily incurred for the purpose of reducing any Business Interruption loss under this policy, provided such coverage shall not exceed the amount by which the Business Interruption loss covered under this policy is thereby reduced.*

Alan H. Goodman, Esquire
May 31, 2007
Page 4

> *(3) EXPERIENCE OF BUSINESS: In determining the amount of net profit (or loss), charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the Insured's business before the date of damage or destruction and to the probable experience thereafter had no loss occurred."[1]*

In applying the above methodology and in determining Conco's business interruption loss, the following calculations were performed for the Period of Restoration:

1) Assuming that Conco resumed operations as it actually did ("Resumption of Operations"):

The difference between its actual versus "but for" profits as follows: [2]

a. The amount of actual net profit (loss) earned by Conco[3], and

b. The amount of "but for" net profit (loss) which was prevented from being earned.

This amount was calculated by using Conco's budgeted profit for the Period of Restoration[4] adjusted by its historical budget versus actual achievement factor attained by it during the seven months January through July 2005, the months immediately prior to the month of the Hurricane. This period was selected as it was not affected

---

[1] The Policy, page 3.

[2] The individual revenue and expense accounts comprising this difference were adjusted for amounts that were not attributable to the Hurricane.

[3] In determining Conco's actual net profit, increased levels of operating expenses were noted in areas, including payroll and delivery expense, due to issues including inefficiencies in operations resulting from property damage to the Harahan Warehouse. These operating expenses to the extent possible were separately categorized in Conco's accounting system. However, Conco's accounting system did not allow this delineation for all of these expenses. To the extent that certain of these expenses would have been separately categorized as extra expenses, the amount of business interruption loss and extra expenses noted herein would have decreased and increased, respectively, in the same amount, resulting in no change in the total amount of the Claim.

[4] Conco's budgeted profits for the Period of Restoration were prepared by it for two separate periods, Aug – Dec 2005 and Jan – Nov 2006. The former was a part of Conco's 2005 calendar year budget prepared by it prior to the Hurricane and the latter was part of its 2006 calendar year budget which was prepared by it after the Hurricane. A comparative analysis of the 2005 budget to Conco's actual performance prior to the Hurricane indicates that its actual performance was closely tracking budget. The 2006 budget prepared after the Hurricane when compared to the 2005 budget prepared before the Hurricane is reasonably consistent given Conco's historical operations.

Alan H. Goodman, Esquire
May 31, 2007
Page 5

by the Hurricane and in keeping with the requirements of the Policy as set forth above.

The results of these calculations are as follows:

|  | *Resumption of Operations* |
| --- | --- |
| Costs and Expenses | $205,561,483 |
| Revenue, Including Inside Margin | 205,840,489 |
| Net Income (Loss) | 279,006 |
| "But For" Profits | 7,350,126 |
| Business Interruption Loss Assuming Resumption of Operations | $7,071,120 |

2) Assuming that Conco had not resumed operations ("No Resumption of Operations"):

The sum of continuing expenses and "but for" profits as follows:

a. All expenses (excluding ordinary payroll), to the extent that they would have necessarily continued during the Period of Restoration and only to the extent to which they would have been incurred had no loss occurred.

For the purpose of this calculation, these amounts were determined based upon the actual expenses incurred by Conco during the seven months January through July 2005, the months immediately prior to the month of the Hurricane. This period was selected as expenses incurred during this period were not affected by the Hurricane. Additionally, only expenses that were likely to continue during the Period of Restoration (excluding ordinary payroll) were included.

Alan H. Goodman, Esquire
May 31, 2007
Page 6

b. The amount of "but for" net profit (loss) which was thereby prevented from being earned.

This amount was calculated by using Conco's budgeted profit for the Period of Restoration[5] adjusted by its historical budget versus actual achievement factor attained by Conco during the seven months January – July 2005, the months immediately prior to the month of the Hurricane. This period was selected as it was not affected by the Hurricane and in keeping with the requirements of the Policy as set forth above.

The results of these calculations in a) and b) above are as follows:

|  | _No Resumption of Operations_ |
|---|---|
| Costs and Expenses | $12,308,522 |
| Revenue, Including Inside Margin | 0 |
| Net Income (Loss) | (12,308,522) |
| "But For" Profits | 7,350,126 |
| Less: August 1st - 28th Profit | (111,409) |
| Business Interruption Loss Assuming No Resumption of Operations | $19,547,239 |

In view of 1) and 2) above, it should be noted that as a result of Conco's Resumption of Operations during the Period of Restoration, Conco reduced its business interruption loss from $19,547,239 (assuming No Resumption of Operations) to $7,071,120 (assuming the Resumption of Operations), for a total savings of $12,476,119 for Lexington. Should the trier of fact in this matter find that Conco is entitled to recover such amount of the total savings noted above, then the amount of business interruption loss under the Policy in this matter totals $12,476,119.

---

[5] _Ibid._

Alan H. Goodman, Esquire
May 31, 2007
Page 7

3) Assuming that the Policy wording is interpreted as written and given that Conco resumed operations as it actually did ("Policy Language"):

The sum of continuing expenses and "but for" profits reduced by the actual net income as follows:

a. All expenses (excluding ordinary payroll), to the extent that they would have necessarily continued during the Period of Restoration and only to the extent to which they would have been incurred had no loss occurred.

For the purpose of this calculation, these amounts were determined based upon the actual expenses incurred by Conco during the seven months January through July 2005, the months immediately prior to the month of the Hurricane. This period was selected as expenses incurred during this period were not affected by the Hurricane. Additionally, only expenses that were likely to continue during the Period of Restoration (excluding ordinary payroll) were included.

b. The amount of "but for" net profit (loss) reduced by the actual net income

The results of these calculations in a) and b) above are as follows:

|  | *Policy Language* |
| --- | --- |
| Costs and Expenses | $12,308,522 |
| "But For" Profits Reduced by Actual Net Income | 7,071,120 |
| Business Interruption Loss Assuming Policy Language | $19,379,642 |

In view of these calculations, the business interruption loss is $19,379,642 under the Policy Language.

Alan H. Goodman, Esquire
May 31, 2007
Page 8

*Sales Trend Before versus After the Hurricane -*

In performing the calculations noted above, Conco's actual sales for the one-year period before the Hurricane were used to calculate its "but for" sales trend after the Hurricane. This "but for" sales trend was then compared to Conco's actual sales trend after the Hurricane.

In connection with this analysis, we noted that Conco entered into an agreement with Picadilly Restaurants, LLC ("Picadilly") to supply approximately fifty of its cafeteria-style restaurants beginning in August 2005 from the Harahan Warehouse. Since this occurred after the preparation of Conco's 2005 budget, the effect of these sales was not included therein. Had the effect of these sales been included in Conco's 2005 budget, the amounts of business interruption loss noted above would increase.

Furthermore, for purpose of consistency in preparing the graph noted below and in performing our analysis of Conco's sales trend before versus after the Hurricane, monthly sales to Picadilly were excluded from our analysis of Conco's actual versus "but for" sales trend. A graphic depiction of this analysis without Picadilly sales is as follows:

**Monthly Sales Trend w/o Picadilly Before and after Hurricane**



Alan H. Goodman, Esquire
May 31, 2007
Page 9

*Sales from Conco's Shreveport, Louisiana Facility -*

After the Hurricane during the month of September 2005, Conco sold and delivered certain products to some of its Harahan Warehouse customers from its Shreveport, Louisiana facility to the extent possible. However, due to the increased cost and limited and incomplete selection of products associated with its Shreveport facility, this practice was discontinued. Our calculations of business interruption losses were reduced by the financial benefit derived by these sales.

**Extra Expenses -**

Extra expense is addressed in the Policy as follows:

> "*Extra Expense meaning the excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein.*"[6]

In applying the above methodology and in assessing Conco's extra expenses, the following procedures were performed:

> o  A compilation of amounts of extra expenses claimed by Conco was prepared totaling $2,887,688 reflecting information from the various accounting and related documents supporting this amount.

---

[6] *The Policy, page 3.*