# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CONSOLIDATED COMPANIES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-4700** |
| **LEXINGTON INSURANCE COMPANY** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Consolidated Companies, Inc.'s motion to alter or amend final judgment on the application of amended La. Rev. Stat. 22:658, pursuant to Federal Rule of Civil Procedure 59(e), is **DENIED**. (Document #150.)

**IT IS FURTHER ORDERED** that Lexington Insurance Company's motion to alter or amend judgment, pursuant to Federal Rule of Civil Procedure 59(e), is **DENIED**. (Document #160.)

**IT IS FURTHER ORDERED** that Lexington's motion for judgment as a matter of law/new trial and remittitur is 1) **GRANTED** on the issue of credit for the $3,000,000 advance, 2) **DENIED** as to the reduction for losses for business-interruption caused by a peril not covered by the policy, 3) **DENIED** as to the reduction of actual losses for business interruption for

charges and expenses, 4) **DENIED** as to a reduction of loss for business interruption for ordinary payroll, and 5) **GRANTED** as to a reduction of loss for business interruption for markups and discounts , 6) **DENIED** as to extra expenses related to covered damage, 7) **DENIED** as to a reduction of loss for building damage based on improvements to the roof, 8) **GRANTED** as to the reduction of statutory penalties to the extent that the jury's award for uncompensated losses is reduced, and 9) **DENIED** as to the award of statutory damages.  (Document #161.)

  **IT IS FURTHER ORDERED** that the parties prepare and present to the court a proposed amended judgment within ten days of the entry of this order.

## I. BACKGROUND

  Lexington Insurance Company (Lexington) issued an all-risk policy to Consolidated Companies, Inc. (Conco) with coverage for losses up to $25,000,000 for business-interruption loss, extra expenses, and damage to real and personal property.  As a result of Hurricane Katrina, Conco's food distribution facility in Harahan, Louisiana, suffered damage.  Lexington made a general advance of $3,000,000 to Conco.

  Conco filed a complaint for breach of contractual obligations under the policy.  The case proceeded to trial before a jury on July 7, 2008.  The jury returned a verdict in favor of Conco for uncompensated losses of $24,669,787 for lost inventory, property damage, extra expenses, and business interruption; statutory penalties of $6,167,446.75; and statutory damages of $2,500,000. The statutory penalties under La. Rev. Stat. 22:658 were calculated and entered in the judgment under the pre-amendment version of 22:658, which provided for a 25% penalty.

  Conco filed a motion to alter or amend the judgment, pursuant to Federal Rule of Civil

Procedure 59(e), to apply the amended version of 22:658 that provides a 50% statutory penalty, and attorney's fees and costs, effective August 15, 2006. Lexington filed a motion to alter or amend the judgment, pursuant to Rule 59(e), to eliminate the $2,5000,000 in damages awarded under La. Rev. Stat. 22:1220. Lexington also renews its motion for judgment as a matter of law and files a motion for a new trial and remittitur, pursuant to Rules 50(b) and 59.

## II. DISCUSSION

### A. Rule 59(e) motions

#### 1. Legal standard

"A Rule 59(e) motion is a motion that calls into question the correctness of a judgment." In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002). "Rule 59(e) is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence." Id.

#### 2. Conco's motion regarding application of amended La. Rev. Stat. 22:658

Conco argues that the judgment should be amended to increase the penalty by $4,896,560, reflecting a 50% penalty on the $19,586,239 awarded by the jury under La. Rev. Stat. 22:658 for failure to pay the business-interruption losses. Conco contends that its business-interruption claim presented to Lexington before August 15, 2006, was preliminary and was not factually determinable until after November 30, 2006, when the roof construction work was substantially completed. Conco contends that, as of August 15, 2006, the warehouse roof was still under restoration, and Conco was incurring "new damage" each day while the roof was being repaired. Conco argues that it would have been impossible to submit a complete proof of business-interruption loss until November 30, 2006, and that the claim was finally presented to

3

Lexington upon the submission of Conco's expert report on May 31, 2007. Conco requests that the court amend the judgment to apply the 50% penalty to the entire business-interruption award.

Lexington contends that the court should decline to determine when Lexington received satisfactory proof of loss because it is a question of fact that is within the province of the jury and that here the jury was not asked to make that determination. Alternatively, Lexington argues that the record does not support Conco's assertion that the revised expert report is the relevant "proof of loss" for the business-interruption claim because Conco admits that the initial proof of loss, including the loss from business interruption, was presented in February 2006. Lexington contends there is no reason to believe that the jury imposed penalties for the business-interruption claim based on an expert report submitted over 11 months after the complaint was filed.

Section 22:658 provides a penalty for bad faith failure to pay a claim timely. In June 2006, the Louisiana legislature amended 22:658 to increase the penalty under that section from 25% to 50% of the amount the claimant is owed and to reinstate the award of reasonable attorney's fees and costs. See La. Acts No. 813 § 1. The changes went into effect on August 15, 2006, and are not applied retroactively. See Sher v. Lafayette Ins. Co., 988 So.2d 186, 197, 200-01 (La. 2008).

The law in effect at the time the cause of action arises is the law which is applied to the case. Hartenstein v. State Fair Fire and Casualty Ins. Co., 2008 WL 2397713 at *4 (E.D.La. June 10, 2008) (citing Aronson v. State Farm Fire and Cas. Co., 969 So.2d 671,681 (La. Ct. App. 2007)). "A plaintiff's cause of action can arise in one of three ways: (1) when the complaint is

filed if satisfactory proof of loss was not provided prior to the filing of the complaint; (2) when the plaintiff provides satisfactory proof of loss and the defendant fails to pay; or (3) when the plaintiff has provided satisfactory proof of loss and has been paid for some damage, new damage is discovered, satisfactory proof of loss is provided to the defendant after such discovery, and the defendant fails to pay." Id. at *4. "Satisfactory proof of loss is that which is sufficient to *fully apprise* the insurer of the insured's claim." Id. at n.17 (citing McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1089 (La. 1985)). Section 22:658 is penal and nature and must be strictly construed. See Reed v. State Farm Mut. Auto. Ins. Co., 857 So.2d 1012, 1020 (La. 2003).

In Sher, the Supreme Court of Louisiana stated as follows:

> Here, although an insurer has a continuing duty of good faith and fair dealing which extends through the litigation period, the claim first arose prior to the amendment of R.S. 22:658. Because the duty is a continuing one, had plaintiff not first made satisfactory proof of loss prior to the amendment of R.S. 22:658, his petition for damages served after the amendment became effective could have served as satisfactory proof, thereby triggering the time period set forth in the statute and could have subjected Lafayette to the penalties contained in the amendment because the claim would have first arisen after the amendment. Further, again because the duty is a continuing one, had plaintiff made satisfactory proof of loss prior to the amendment and had Lafayette paid that claim, and had plaintiff discovered new damage and made satisfactory proof which Lafayette failed to pay within the time period contained in the statute, but after the amendment became effective, Lafayette could have been subject to the penalties contained in the amendment because the claim would have arisen after the effective date of the amendment. Neither of those situations is the case here–the claim for the penalties contained within the statute arose prior to the effective date of the amendment. Plaintiff's argument that Lafayette's continuing breach of the duty of good faith and fair dealing made it subject to the increased penalties contained in the amended version of R.S. 22:658 is without merit.

Sher v. Lafayette Ins. Co., 988 So.2d at 199.

The record before the court indicates that Conco apprised Lexington of its claim for a

business-interruption loss before the effective date of the amended version of 22:658.  As in

Sher, Conco submitted its proof of loss at least three times before the statute was amended, and

the claim for penalties arose prior to the effective date of the amendment.  The first proof of loss

was filed in February 2006.  The total projected claim was $9,392,603, and the business

interruption claim was $3,659,159.  A second proof of loss was filed on May 16, 2006, and

Conco received a general advance from Lexington of $3,000,000.  The complaint was filed on

August 25, 2006, just ten days after the effective date of the amendment, seeking a total

preliminary loss estimate of $10,353,535 and a business-interruption loss estimate of $3,659,159,

the same amount claimed in the previous proof of loss.  On May 31, 2007, after the complaint

was filed, Conco submitted a final claim based on expert reports, and reduced its claim by

$1,500,000 on August 7, 2007.

Conco now argues that the entire business-interruption loss was not "knowable or

determinable" when it filed the previous proofs of loss. In this motion to alter the judgment,

Conco asks the court to apply the amended 50% penalty to the total jury award for the business-

interruption claim.  However, Conco did not argue to the jury that Lexington was not "fully

apprised" until it received the expert report, and it did not request that the jury make a

determination of when it became "fully apprised."  Further, Conco did not offer evidence that the

business-interruption loss was "new damage."  Although the question of the applicability of a

statute is a question of law based on the underlying material facts, the question of how the claim

developed and when the satisfactory proof of loss was filed with Lexington is a factual one, the

resolution of which cannot be inferred from the jury's answers to the interrogatories. The court

declines to make an explicit factual finding on an issue that was not presented to the jury.

Based on the record, the memoranda, and the principle that penal statutes are to be strictly construed, Conco has not demonstrated a manifest error of law or fact that the amended version of 22:658 should apply. Accordingly, Conco's Rule 59(e) motion to alter or amend the judgment is denied.

### 3. Lexington's motion regarding damages under La. Rev. Stat. 22:1220

Lexington moves to alter or amend the judgment to eliminate the award of $2,500,000 in damages under La. Rev. Stat. 22:1220. Lexington argues that Conco may not receive penalties under 22:658 and damages under 22:1220 because both statutes are penal in nature and must be strictly construed.

La. Rev. Stat. 22:1220 provides in relevant part:

> A. An insurer owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
> . . . .
> C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

"[S]ection 22:1220 allows recovery of any general and special damages resulting from the breach of an insurer's duty of good faith and fair dealing, and, in addition, the award of a penalty up to twice the amount of damages." Marketfare Annunciation, LLC v. United Fire and Cas., 2006 WL 3759565 *5 (E.D.La. 2006). "The damages that are recoverable under La.R.S.

22:1220(C) include any damages, foreseeable or not, that are a direct consequence of [Lexington's] breach. Felham Enterprises (Cayman) Ltd. v. Certain Underwriters at Lloyds, 2005 WL 2050284 (E.D.La. 2005). The jurisprudence instructs that Conco is entitled to recover a penalty under La. Rev. Stat. 22:658(B) or 22:1220 (C), whichever is greater, but a penalty cannot be recovered under both statutes. See Calogero v. Safeway Ins. Co. of La., 753 So.2d 170, 174 (La. 2000). Whether Conco has suffered damages as a result of Lexington's breach is a factual determination for the trier of fact. See Dixon v. First Premium Ins. Group, 934 So.2d 134, 144 (La. Ct. App. 2006). "Assessing credibility and making factual determinations are uniquely within the province of the jury." Klumpe v. IBP, Inc., 309 F.3d 279, 293 (5th Cir. 2002).

The jury found Lexington liable for penalties under La. Rev. Stat. 22:658 and 22:1220. Applying the rule that a party cannot recover penalties under both statutes, the court awarded Conco the larger of the two awards under La. Rev. Stat. 22:658. No penalty was awarded under La. Rev. Stat. 22:1220.

The clear language of La. Rev. Stat. 22:1220 provides for general and special damages in addition to a penalty for breach of the imposed duty. The jury awarded damages under La. Rev. Stat. 22:1220 of $2,500,000 as a direct consequence of Lexington's failure to pay the amount due on Conco's insurance claims. Lexington cites no authority for its argument that the jury may not award damages under La. Rev. Stat. 22:1220 and a penalty under La. Rev. Stat. 22:658. Lexington has not demonstrated a manifest error of law or fact or presented newly discovered evidence that calls into question the correctness of the judgment. The motion to alter

or amend judgment is denied.

**B. Lexington's motion for judgment as a matter law, for a new trial and remittitur**

    **1. Legal standard**

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."  Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277, 282 (5th Cir. 2007) (internal quotation and citation omitted).  The court considers "all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."  Id.  "[J]udgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."  Id. (internal quotation and citation omitted).  "A jury verdict must be upheld unless a reasonable jury would not have a legally sufficient evidentiary basis to find as the jury did." Id.

"Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial."  Streber v. Hunter, 221 F.3d 701, 736 (5th Cir. 2000).  "Ultimately the motion invokes the sound discretion of the trial court."  Id.

    **2. Deduction for $3,000,000 advance**

Lexington contends that the jury improperly overlooked and failed to deduct from its award the $3,000,000 advance that Lexington paid to Conco on June 6, 2006.  Lexington argues

that the jury award of $24,669,787 represents the entire amount of Conco's claim of $24,970,551, less $300,764 for repairs attributable to the rusted metal decking on the roof, and does not consider the advance.

"The district court abuses its discretion if it enters a clearly excessive verdict." <u>Polanco v. City of Austin, Tex.</u>, 78 F.3d 968, 982 (5th Cir. 1996). "A verdict is excessive if it is contrary to the right reason or entirely disproportionate to the injury sustained." <u>Id</u>. If a district court determines that an award is excessive, but not based on bias, passion and prejudice, the court may cure the verdict by remittiturs, rather than by ordering a new trial. <u>Id</u>.

The court finds that the jury's failure to subtract $3,000,000 from the award is obvious and an oversight, and the correction of the error is mechanical. <u>See</u> <u>Shingleton v. Armor Velvet Corp.</u>, 621 F.2d 180, 182 (5th Cir. 1980) (The court is "empowered to enter a remittitur where the error or oversight is patent and the correction mechanical."). There is no question that Lexington advanced $3,000,000. During the hearing on the proposed jury charges and the interrogatories, the issue of how to present the fact of the advance to the jury to avoid this situation was thoroughly discussed, and it was agreed that it should be deducted.[1]

Lexington requests that the $3,000,000 reduction be allocated as follows: $617,178 for inventory losses, $1,188,182 for damage to the warehouse, and $1,194,640 for extra expenses. Conco also agrees that any reduction be allocated first to the inventory loss, then to the building damage loss, and then to the extra expense loss. The calculation shall be made accordingly.

---

[1] The penalty calculation will also be reduced to reflect this adjustment of the amounts for which Lexington is liable.

Accordingly, after applying the $3,000,000 reduction, the loss for inventory is $0; for property damage, $390,500; for extra expense $1,693,048; and for business interruption, $19,586,239, for a total of $21,669,787.

### 3. Business interruption loss

The jury awarded $19,586,239 in actual loss for business-interruption as follows: $7,071,120 in net profits prevented from being earned, $12,308,522 in charges and expenses necessarily continued during the interruption of business, $124,475 for mark-ups on inventory, and $82,122 for discounts on inventory.

Lexington presents several arguments that Conco did not suffer any business-interruption loss. Lexington contends that a new trial is warranted because the jury was incorrectly instructed regarding the method of calculating business-interruption loss.

The policy contains the following provision concerning loss from business interruption:

BUSINESS INTERRUPTION

Business interruption means loss resulting from necessary interruption of business conducted by the insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to real and/or personal property as covered herein.

If such loss occurs during the term of this policy, it shall be adjusted on the basis of the *actual loss sustained by the insured, during the period of restoration, consisting of the net profit (or loss) which is thereby prevented from being earned and of all charges and expenses (excluding ordinary payroll),* but only to the extent that they must necessarily continue during the interruption of business, and only to the extent to which they would have been incurred had no loss occurred.

Ordinary payroll is defined to be the entire payroll expenses for all employees of the insured except officers, executives and department managers.

The Company shall not be liable for any loss resulting from the time required to reproduce finished stock. Finished stock shall mean stock manufactured by the insured which in the ordinary course of the insured's business is ready for packing, shipment, or sale.

(1) RESUMPTION OF OPERATIONS: It is a condition of this insurance that if the insured could reduce the loss resulting from the interruption of business
      (a) by a complete or partial resumption of operations, or
      (b) by making use of other available stock, merchandise or location such reduction will be taken into account in arriving at the amount of loss hereunder, but only to the extent that the business interruption loss covered under this policy is thereby reduced.

(2) EXPENSE TO REDUCE LOSS: This policy also covers such expenses as are necessarily incurred for the purpose of reducing any business interruption loss under this policy, provided such coverage shall not exceed the amount by which the business interruption loss covered under this policy is thereby reduced.

(3) EXPERIENCE OF BUSINESS: In determining the amount of net profit (or loss), charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the insured's business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

### a. Reduction for loss not caused by property damage

Lexington contends that Conco failed to prove that its claim for business-interruption loss was caused by a peril covered by the policy. Lexington argues that the jury awarded Conco's entire claim for business-interruption loss without any reduction for losses not caused by the property damage. Lexington argues that William Legier, Conco's accounting expert, admitted that he did not segregate the business-interruption losses caused by direct physical loss or damage from a covered peril from losses as a result of the general business conditions in Louisiana in the aftermath of the storm.

Lexington further contends that evidence of Conco's budgets for the two periods of August through December 2005 and January through November 2006 is insufficient to establish what Conco's profits might have been in the aftermath of Hurricane Katrina if its warehouse had not been damaged. Lexington contends that the budget for August through December 2005 was prepared prior to the hurricane and does not reflect any effect that the hurricane might have had on Conco's business, and that the budget for January through November 2006 was prepared after Hurricane Katrina, but does not examine Conco's likely performance after Hurricane Katrina in the absence of covered property damage.

The evidence was sufficient for the jury to conclude that business-interruption losses were the result of Conco's covered damage. The jury heard evidence that the hurricane caused extensive damage to Conco's roof, its refrigeration system, and its computer system. The damage to the computer system affected Conco's ability to track and locate its inventory, which affected its ability to provide efficient service to the customers.

Further, the evidence is sufficient to conclude that the losses were not caused by market conditions after Hurricane Katrina. The jury heard evidence that Conco resumed operations ten days after the storm and that it was the only food service company doing any business or shipping any product into the New Orleans area immediately after the storm. Although Conco lost sales because many of its customers were not able to resume business right away, Conco was able to acquire new business during the period of restoration because of entities, such as FEMA, which came into the area, and the inability of their competitors to resume operations immediately after the storm. There was testimony that Conco had to turn away business

because of issues related to the covered damage.

The evidence is sufficient to support the jury's verdict that Conco was prevented from earning a net profit of $7,071,120, which it would have earned if the damage to its property had not occurred. The calculation was not merely hypothetical, but was based on Conco's performance before the storm and its projected budgets for 2005 and 2006. Further, the jury was presented with documentary and testimonial evidence that Conco reduced its loss by resuming operations during the period of restoration, which ended in November 2006. Conco presented evidence that it spent $205,561,483 during the 15-month period of restoration and generated revenues in excess of $205,000,000[2] to earn a net profit of $279,006.[3] The net profit that was prevented from being earned was reduced by the net profit of $279,006 that was earned by the resumption of operations. The motion for judgment as a matter of law and for a new trial on the business-interruption loss is denied.

### b. Charges and expenses

Lexington argues that the court should grant judgment as a matter of law or grant a new trial on the $12,308,522[4] in charges and expenses that the jury awarded as part of the business-interruption claim. Lexington argues that the evidence establishes that Conco suffered no loss

---

[2]    When the expenses are added to the net profit of $279,006, the revenues total $205,840,489.

[3]    Conco contends that $12,308,522 are expenses incurred to reduce the business-interruption loss and are covered under the policy.

[4]    Conco presented testimonial evidence that the actual figure for charges and expenses was $1,000,000 higher than the extrapolated figure of $12,308,522.

of charges and expenses because it earned sufficient revenue from resuming operations to pay all of its charges and expenses and to generate a profit.

Alternatively, Lexington contends that Conco did not present evidence of actual charges and expenses it incurred during the interruption of business. Lexington argues that Conco offered only a projection of what it might have spent in a hypothetical shutdown of its business, which it extrapolated from its historical expenses.

The court instructed the jury as follows regarding the business interruption loss:

Conco is claiming that under paragraph 7(B) of the Policy Lexington has failed to pay for Conco's business interruption losses while its facilities were being restored following Hurricane Katrina.

The insurance policy covers the actual loss (if any) that Conco sustained during the "Period of Restoration" resulting in the necessary interruption of its business caused by direct physical loss or damage to Conco's property covered under the policy.

The policy is designed to place the insured in the position that it would have been in if there had been no interruption. The policy is not designed to put the insured in a better position than if no loss or interruption of business had occurred.

In calculating business-interruption loss, you may consider only losses caused by covered damage to Conco's property during Hurricane Katrina, not any lost profits that may have resulted from changes in Conco's customer base and market as a result of Hurricane Katrina.

In addition, the amount of business-interruption loss must be reduced to the extent that Conco was able to reduce its loss through completely or partially resuming operations.

The Business Interruption loss shall be adjusted on the basis of the actual loss sustained by Conco during the period of restoration consisting of the net profit (or loss) which is thereby prevented from being earned and of all charges and expenses (excluding ordinary payroll) but only to the extent that they must

necessarily continue during the interruption of the business, and only to the extent to which they would have been incurred had no loss occurred.

According to the Policy you should calculate Conco's claim for business interruption losses under paragraph 7(B) by a four-step process.

The first step is to decide the period of restoration of Conco's warehouse following Katrina. The period of restoration began on the date of the physical loss or damage from Katrina, which was August 29, 2005, and ends on the date when the covered damages to Conco's warehouse should have been repaired, rebuilt or replaced with reasonable speed.

The second step is to determine from the evidence the net profit that Conco would have earned during the period of restoration of the warehouse roof if the physical damage caused by Hurricane Katrina had never happened, and then you should subtract from this number any actual net profit Conco earned for that period.

The third step is to determine from the evidence the charges and expenses (excluding ordinary payroll) incurred by Conco during the period of restoration, but only to the extent that they must necessarily have continued during the interruption of Conco's business, and only to the extent to which they would have been incurred had Hurricane Katrina not occurred.

The fourth step requires you to add the two figures derived from steps two and three and the combined total will constitute your award to Conco for its business interruption losses under paragraph 7(B) of the Policy.

A claim for business interruption losses need not be proved with mathematical precision. Broad latitude is given in proving this loss. Nevertheless, losses for business interruption cannot be based on conjecture or speculation.

In considering any evidence offered to prove Conco's business interruption losses during the period of restoration of the warehouse roof, the Policy in paragraph 7(B)(3) requires that due consideration shall be given to the experience of Conco's business before the date of its damage by Katrina and to the probable experience thereafter had no damage been sustained.

In order to calculate Conco's actual loss, the jury had to consider two components: the

net profit prevented from being earned and charges and expenses, excluding ordinary payroll.

At the first step, the jury found that there was credible evidence that the net profit, which was prevented from being earned, was $7,071,120. At the second step, the jury found charges and expenses of $12,308,522. The calculation included the reduction of the loss by $279,006, the profit that was earned by the resumption of operations.

"Any ambiguity in an insurance policy is construed against the insurer." <u>Louisiana Maintenance Serv., Inc. v. Certain Underwriters at Lloyd's of London</u>, 616 So.2d 1250, 1252 (La. 1993). "Policy ambiguities are construed in favor of coverage." <u>Id</u>. "The test for construing an insurance policy is not what the insurer intended the words to mean, but how the words would have been understood by a reasonable person in the shoes of the insured." <u>Dawson Farms, L.L.C. v. Millers Mut. Fire Ins. Co.</u>, 794 So.2d 949, 952 (La. Ct. App. 2001). "The policy should be read as a layman would have read it and not as it might be analyzed by an insurance expert." <u>Id</u>.

A reasonable person's reading of the policy is that either the total actual loss sustained by the insured during the period of restoration, or the net profit which is thereby prevented from being earned, is reduced by any profit earned during the resumption of operations. The policy does not address "charges and expenses" in the event of a resumption of operations and does not clearly state the effect that a resumption of operations has on the calculation of charges and expenses.

Conco presented the testimony of William Legier that the actual charges and expenses were $1,000,000 more than $12,308,522, the figure extrapolated from historical expenses. Reading the policy as a layman would, the jury rejected Lexington's argument that there was no

business-interruption loss and calculated the loss as instructed.

Accordingly, considering all of the evidence and resolving all credibility determination in favor of Conco, Lexington's motion for judgment as a matter of law on the issue of charges and expenses is denied.

### c. Ordinary payroll

Lexington contends that the jury award of $7,071,120 in lost profits as part of the business-interruption claim improperly compensates Conco for its ordinary payroll, which is not covered under the policy. Lexington argues that Conco's computation of its claim for lost profits, by subtracting its actual profit in the aftermath of Hurricane Katrina of $279,006 from the profit it would have otherwise earned is an "end-run" around the exclusion for ordinary payroll. Specifically, Lexington argues that, by deducting $12,900,000 of ordinary payroll in calculating actual net profit, which Conco then subtracted from "but for" profit to compute damages, Conco increased its lost-profit recovery by $12,900,000. Lexington argues that the amount of Conco's net profit after resuming operations must be calculated independently of the amount Conco spent on ordinary payroll. When net profit is calculated this way, argues Lexington, Conco suffered no covered "actual loss" under the policy.

There is no provision in the policy under the "Resumption of Operations" provision that, in calculating the actual profit or loss sustained by the insured during the period of restoration, the net profit prevented from being earned be reduced by ordinary payroll paid during the resumption period. Conco generated over $205,000,000 in revenue when it resumed operations and spent $12,900,000 of that revenue on ordinary payroll. In determining the net profit earned

of $279,006, ordinary payroll was properly deducted from the revenue generated during the resumption of operations.

### d. Markups and discounts on inventory

Lexington argues that the jury improperly awarded the markups of inventory of $124,475 and discounts on inventory of $82,122. Lexington contends that markups and discounts are not components of business-interruption loss.

The court instructed the jury that, in determining the replacement cost for any damaged inventory, the jury may not include any profit, or mark-up that Conco might have obtained had the inventory been sold.[5] Based on this instruction and Conco's argument, the jury did not increase the inventory loss, but added the markups and the discounts to the business-interruption loss. There is no provision in the policy, and Conco does not present any authority, for including the markups and discounts in the calculation of either the net profit or charges and expenses to calculate the business-interruption loss. Accordingly, the business-interruption loss is reduced by markups of inventory of $124,475 and discounts on inventory of $82,122.

### 4. Extra Expenses

Lexington contends that at least a portion of the $2,887,688 that the jury awarded to Conco for extra expenses was unrelated to the covered damage to its warehouse. Lexington argues, for example, that Conco hired extra workers to replace its missing employees; however, the workers performed the ordinary tasks that Conco employees would have performed

---

[5] When Conco presented its claim to Lexington, it reduced the claim by the markup amount on the inventory. Record document #161-4 at 43.

regardless of whether the warehouse had been damaged.

Conco presented sufficient evidence that the extra expenses were related to the warehouse damage. There was testimonial evidence that working conditions at the warehouse were extraordinary in the aftermath of Hurricane Katrina. Conco found it necessary to double its usual staff of employees to address inefficient conditions at the warehouse, such as debris removal, refrigeration problems, and the destruction of the inventory tracking system. The jury had a legally sufficient basis to find that Conco incurred extra expenses and to determine the value of those expenses.

### 5. Improvements to the roof

Lexington contends that the "Building Damage" award should be reduced by $393,600 to reflect the additional cost of adding the sloped roof instead of replacing the roof with an identical flat roof as required by the policy in § 11(A)(1)(b). Lexington argues that the sloped roof is an improvement, rather than a replacement of an identical roof.

Conco presented evidence that the replacement cost for the flat roof with a warranty would have been higher than the sloped roof that was installed, and that the identical roof was not available. Because the actual cost to Conco for the sloped roof was less than replacement cost of a flat roof, the jury had a legally sufficient evidentiary basis to award damages for replacement of the flat roof with the less expensive sloped roof.

### 6. Statutory penalties

Lexington contends that the penalties should be reduced to reflect any decrease in the jury's award for uncompensated losses. Judgment as a matter of law is granted reducing the

statutory penalties to reflect the $3,000,000 advance and the reduction of loss for business interruption for markups and discounts. The parties are ordered to prepare a proposed amended judgment to reflect the reductions.

### 7. Statutory damages

Lexington moves for judgment as a matter of law or a new trial on the award of $2,500,000 in statutory damages. Lexington contends that Conco's calculation of return on equity is not supported by the evidence and was introduced for the first time in counsel's closing argument. Lexington argues that no witness testified about Conco's "return on equity" or supported counsel's suggestion of how it could be calculated in this manner. Lexington acknowledges that Jean Lehman testified as to shareholder equity, operating income, and depreciation, but argues that she did not testify as to the calculation of "return on equity." Further, Lexington contends that the lay opinion testimony of Victor Kurzweg, the chief executive officer and chairman of the board of Conco, concerning the formula used by buyers to price a business as a multiple of "Earnings Before Interest, Taxers, and Depreciation" (EBITDA) was improper. Lexington argues the Kurzweg determined the EBITDA multiple based on transactions of other companies and had no personal knowledge of specific transactions involving other companies. Lexington contends that the specialized knowledge requires expert testimony and is an impermissible subject for lay testimony.

The jury heard testimony that Conco was unable to undertake new projects because of Lexington's refusal to pay the insurance claim. Kurzweg testified that Conco was unable to expand its Shreveport warehouse by building a $15,000,000 new warehouse in nearby Marshall,

Texas, because of lack of funds. The business opportunity was lost when a competitor was able to expand its business to the area. Kurzweg further testified that Conco wanted to upgrade its internet ordering system, including on-board truck computers, in an effort to increase operating efficiency, a critical component in a business with low profit margins.

Kurzweg's testimony concerning the EBITDA multiple was proper because of his knowledge of the industry and his position as the chief executive officer. The court did not allow Kurzweg to quantify the damages, but limited his testimony to an explanation of the concepts of EBITDA and the application of a multiple of eight times EBITDA for businesses such as Conco.

Conco presented the jury with three items from Conco's 2004 financial statements: shareholder equity of $29,019,699, operating income of $1,519,836, and depreciation of $2,404,236. The jury was asked to add the operating income to depreciation; divide that number by shareholder equity, resulting in 13.56%; and multiply 13.56% by $24,970,551, the claimed damages, to arrive at $3,386,006. Based on testimony that companies such as Conco sell for eight to ten times multiples of that number, the jury was asked to calculate the lost fair market value by multiplying $3,386,006 by eight, resulting in $27,088,053. Conco requested that the jury award $20,000,000 in damages, and the jury awarded a reduced amount of $2,500,000.

The court, after considering all of the evidence, drawing all reasonable inferences ,and resolving all credibility determinations in the light most favorable to Conco, concludes that the evidence provided a sufficient basis for the jury to find that Conco had been damaged by

Lexington's failure to pay the claim to the extent that Conco lost business opportunity and, thereby, market value. Lexington's motion for judgment as a matter of law on this issue is denied.

### III. CONCLUSION

Lexington's motion for judgment as a matter of law, new trial and remittitur is granted on the issue of credit for the $3,000,000 advance and a reduction of the business-interruption loss of $124,475 for markups of inventory and $82,122 for discounts on inventory. As to the remaining issues Lexington's motion for judgment as a matter of law, new trial and remittitur is denied. The motions to alter or amend judgment of Conco and Lexington, pursuant to Rule 59(e) are denied.

The parties are hereby ordered to prepare and present to the court a proposed amended judgment within ten days of the entry of this order.

New Orleans, Louisiana, this  23rd  day of January, 2009.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**